## HARRISON v. WESTERN UNION TEL. CO.

1. Telegraph Companies.—Charge as to duty of telegraph company to employ competent and diligent servants to receive and deliver messages is responsive to the allegations of the complaint; and as to waiver of office hours: as to delivery of messages within office hours with promptness; as to damages for negligence in delivery of messages; as to agency of person permitted to receive a message; as to punishing company for acts of agent done purposely with disregard of rights of plaintiff, sustained and held to be responsive to the evidence.

2. Refusal of new trial moved on grounds: (1) of entire absence of evidence of damages; (2) of no evidence of waiver of office hours; (3) that plaintiff could not have attended his father's funeral; (4) that there was no evidence of wilfulness, affirmed.

Before Gage, J., Edgefield, November, 1905.   Affirmed.

Action by P. B. Harrison against Western Union Telegraph Co. From judgment for plaintiff, defendant appeals.

*Messrs. Geo. H. Fearons, Evans & Finley, Barrett & Tompkins* and *Wells,* for appellant.   *Mr. Evans* cites: *It is error to charge a request not responsive to any issue made by pleadings:* 15 S. C., 95; 66 S. C., 18; 51 S. C., 304, 404.   *No duty rested on company to deliver telegram out of office hours:* 71 S. C., 387, 304.   *No evidence of waiver of office hours:* 70 S. C., 21; 71 S. C., 304.   *Agent occupying position of operator and railroad agent is not required to deliver messages at train time:* Thomp. on Elec., sec. 299; 8 Bliss., 131; 71 S. C., 303, 386; 94 Ga., 444.   *No foundation is shown for mental anguish for failure to attend funeral if addressee could not have attended, if message had been promptly delivered:* 27 Ency., 2 ed., 1075; 72 S. C., 516.   *As to punitive damages:* 70 S. C., 422.

*Messrs. McG. Simkins* and *Sheppard Bros.,* contra.   *Mr. Simkins* cites: *Charge as to delivery of message promptly is responsive to issues and not prejudicial to appellant:* 69 S.

C., 548; 64 S. C., 104; 72 S. C., 174. *As to waiver of office hours:* 71 S. C., 303, 387. *In absence of motion for nonsuit or request to charge, this Court cannot enquire if there was any evidence to warrant finding of punitive damages:* 72 S. C., 411; *but there was such evidence:* 65 S. C., 93.

October 8, 1906. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The first trial of this action in this Court resulted in a new trial because of errors in the charge of the Circuit Judge. 71 S. C., 380, 51 S. E., 119. It now comes before us after a trial which resulted in a judgment for the plaintiff upon the alleged errors in the charge of the Circuit Judge.

The plaintiff alleged that he suffered greatly because of the negligence and wilfulness of the defendant in its failure to promptly deliver a dispatch announcing the death of his father, Dr. E. J. Harrison, on the 18th April, 1903, which prevented the plaintiff from viewing the remains of his dead father and from attending his burial at Columbia, Va., on the 20th of April, 1903.

The dispatch was in these words: "Columbia, Va., 18—P. B. Harrison, Johnson, S. C. Father died to-day 2.30. Funeral Monday, 11.      "Signed, Kate Harrison."

This telegram was transmitted and received by the defendant at its office at Johnston, S. C., at 8.15 P. M. on the 18th of April, 1903, but was not delivered by it to the plaintiff until, the plaintiff alleges, 10 o'clock Sunday morning, the 19th of April. While the defendant alleges that it delivered the said telegram to the plaintiff at 9.15 on said Sunday. The plaintiff claims that if he had received the telegram on Saturday night he could have gone to Columbia, Va., in time to see the dead body of his father and attend his burial.

Testimony adduced at the trial left some doubt as to who received, for the defendant, the dispatch at its office on

Saturday night. Also as to whether Mr. Brown, the defendant's agent, or Mr. Norris, acting as its agent, received the dispatch at 8.15 o'clock on Saturday night; in the latter case proof was offered that Mr. Norris often received dispatches and sent telegrams for the defendant; on the other hand, it was testified to on the behalf of the defendant that Brown alone was its agent, and that Mr. Norris was not such agent, although it was admitted by the defendant, that Mr. Norris sometimes received dispatches for the defendant.

It was in proof that the printed instructions of the defendant to its agent authorized office hours of the defendant at Johnston, S. C., from 8 in the morning to 8 in the evening on week days, but the Sunday office hours were from 8 to 10 in the morning and 4 to 6 in the evening. It was in proof also that these hours were so authorized in the book of instruction for the defendant to its agents, but it was also in proof that the defendant and its agents at times disregarded these rules. C. J. Terrill testified that he had been the telegraph operator at Johnston. He said although in the rule book there is a statement given, authorizing office hours, that he had never known of that being observed or noticed, the observance of the rules is the exception rather than the rule; he had never known them to be noticed or to be observed at all. He was questioned as follows: "Q. At this time they were not observed? A. I do not think so, I am sure they were not. Q. About Mr. Norris, don't you know that he received and sent messages there for the Western Union Telegraph Co.? A. Very frequently; yes, sir; almost habitually. Q. Was he recognized by the company? A. I do not know what he did about the company; I know it was upon and within the knowledge and consent of the powers there in Johnston." J. H. White, a witness, testified that he was a citizen of the town of Johnston and had been there since 1881. He was questioned as follows: "Did they not have office hours? A. If they ever had any, I do not know it. Q. Did they observe any? A. If they have ever been observed, I do not know it. Q. Did you ever

have any business with them around there?   A. Yes, sir, I have at different times.   Q. During this time?   A. Yes, sir. Q. Have you ever sent messages at any time?   A. I never had them to refuse to send a message at any time.   Q. Would you ever go in there after 8 o'clock?   A. Yes, sir.   Q. 9 or 10 o'clock you would send them, and was it customary with them?   A. They would always send one for me at any time. Q. After 8 o'clock?   A. Yes, sir.   Q. Would do that frequently or not?   A. I do not know, I did it so many times."

After all the testimony had been received the Judge charged the jury; the verdict was in favor of the plaintiff, whereupon the defendant appealed.

The first ground of appeal was abandoned at the trial before us.   We will pass upon the remaining grounds in their order.

"II. In that his Honor erred in charging the second request of the plaintiff, to wit: 'It is the duty of such telegraph company to employ competent and diligent servants for the delivery of messages entrusted to it for delivery; and if such agent is not competent, and is negligent in the delivery of such message, by reason of which the addressee of such message suffers mental anguish or other damage, the company is responsible therefor.'   The error being that said charge was not responsive to any allegation of the complaint, nor to any fact brought out in the testimony."   We overrule the second ground of appeal, because the defendant admitted the charge in the complaint that it was a carrier of news over its telegraph lines.   The business of telegraphing when done properly is through competent and diligent servants.   Of course, in its business as a common carrier, the defendant is liable for its incompetence or negligence in the delivery of messages.   All this assumes the competency and diligence of its servants; it is the defendant company who is responsible and, of course, it is responsible for its agents.   There is no error here.

"III. In that his Honor erred in charging the fourth request of the plaintiff, to wit: 'While it is true that a telegraph

company has the legal right to establish reasonable hours for the transmission and delivery of messages, and if such hours are reasonable, which is a question of fact for the jury, it is under no legal obligations to deliver a message outside of such hours, yet there can be a waiver of such regulations on the part of the company;' 'from here on out I will charge in my own language, as to waiver, and that is this: Waiver consists in that action of a person who possessed of a known right or privilege, created by law or by contract or by other ways for his benefit, yet it is by him purposely ignored and set aside.' The error being that the same was not responsive to any fact brought out in the testimony. There being no evidence whatever of waiver in the case." The testimony in this case, on both sides, related to office hours. Office hours were discussed in the first decision of this case—71 S. C., 386, 51 S. E., 119. Also in *Bonner* v. *Telegraph Co.,* 71 S. C., 303, 51 S. E., 117.

Mr. Justice Jones, in his concurrence in this case, says as to fixing hours: "This, of course, includes the power to establish reasonable office hours. From which it follows that it is not the duty of a telegraph company to receive, transmit or deliver a message out of reasonable office hours, in the absence of circumstances showing an agreement to the contrary or showing a *waiver of regulations*."

The facts established at the hearing tended to establish what is known in law as a waiver, and all that the Circuit Judge did was to define waiver. In doing so he made no mistake. It seems to us from a scrutiny of the testimony that there was testimony of waiver here. We overrule this exception.

"IV. In that his Honor erred in charging the fifth request of the plaintiff, to wit: 'That the law imposes on the defendant the duty to transmit and deliver with reasonable promptness all messages entrusted to it for transmission, and if the jury find as a matter of fact that the agent of the company came to its office at Johnston, S. C., the morning after the evening the said message was received, and found said mes-

sage and during office hours, negligently failed to deliver with reasonable promptness the same to the plaintiff, whereby plaintiff suffered mental anguish or other damage, the company is responsible for such negligence and damage, and their verdict must be for the plaintiff.' The error being that the same was not responsive to any fact brought out in the testimony, and there was an entire absence of proof showing that any damage resulted to plaintiff through any negligence or failure on the part of defendant during its office hours on Sunday morning after the receipt of said message." We think the Circuit Judge properly defined the duty of the jury under the facts here set forth. This exception is, therefore, overruled.

"V. In that his Honor erred in charging the sixth request of the plaintiff, to wit: 'If the jury find for the plaintiff, they may award such damages as they conclude resulted from the negligence of the defendant.' The error being that said request does not state a sound principle of law. The defendant is only responsible for such damages as are direct and proximate result of negligence on his part, and such only as a reasonable man would suffer under the circumstances." In the Judge's charge he, at length, details the duty of the jury in relation to the facts in proof, and having done so correctly, we see no error here. This exception is overruled.

"VI. In that his Honor erred in charging the jury as follows: 'If Norris was set to do the work of a telegraph operator by the company, or if he was allowed to do that work with the knowledge and consent of the company, and so held out to the public, then he was the company's agent, * * * etc.' The error being that there was no evidence whatever that Norris was the agent of the company, and that fact should not have been submitted to the jury.

"In that his Honor erred in charging the jury as follows: 'Now next, if the telegram was received on Sunday morning, was it delivered with reasonable promptness? If it was received on Sunday morning, and received means what that language implies, was it delivered with reasonable

promptness? If it was not, then it has committed a wrong; and you go one step further and inquire, has its failure to deliver in a reasonable time caused damage to Harrison?' The error being that there was no evidence tending to show that any damage was caused to the plaintiff by reason of the delivery of the telegram on Sunday morning, and this issue should not have been submitted to the jury." So far as Mr. Norris' relation to the defendant is concerned, the jury were to decide whether the testimony showed the acts of an agent as defined by the Court. There was some evidence of such agency; it was the jury's duty to dispose of the same, and they have done so. There was testimony that damage resulted to the plaintiff by reason of the non-delivery of the telegram on Sunday morning, and this issue should have been submitted to the jury. This exception is overruled.

"VII. In that his Honor erred in charging the jury as follows: 'If the telegraph company at Johnston, at the time charged, had a rule for the transaction of business, if it fixed two hours betwixt which alone it did business, then ask yourselves, did it stick to the rule, or waive it?' The error being that there was no evidence of waiver on the part of the defendant and the charge was not responsive to any fact brought out in the testimony, and the issue should not have been submitted to the jury." The Judge charged that the telegraph company at Johnston, in April, 1903, had a rule for the transaction of business, then it was the jury's duty to determine whether it stuck to the rule or waived it. There was evidence on this subject which we have heretofore quoted; therefore, there was no error in the Judge's charge as here complained of. This exception is overruled.

"VIII. In that his Honor erred in charging the jury as follows: 'I charge you, if this act was done a purpose, and done with such disregard of the rights of the plaintiff as to amount to wilfulness, then the jury has the right to apply the whip to the back of the defendant company in order to punish them.' The error being that there was not a scintilla of evidence in the whole case tending to show wilfulness on

the part of the defendant, and the charge was, therefore, not responsive to any fact brought out in the testimony, and this issue should not have been submitted to the jury." The charge as made by the Circuit Judge was that if the act by the agent or agents of the defendant was done purposely with a disregard of the rights of the plaintiff so as to amount to wilfulness, then the jury could punish the company. There was testimony offered on this subject, and it was for the jury itself. Its solution was against the defendant. This exception must be overruled.

"IX. In that his Honor erred in refusing defendant's motion for a new trial: ,

"(a) Because there was an entire absence of evidence tending to show that the plaintiff was damaged to any amount, nominal or actual, through any fault on the part of the defendant.

"(b) Because the uncontradicted evidence shows that the message was received after office hours of the defendant, had closed for business, and was delivered within a reasonable time after the opening of the office for business on the following morning, and there was no evidence to show a waiver on the part of the defendant company of its rights in the premises.

"(c) Because the plaintiff testified that it was possible for him to have reached Columbia, Va., in time to have seen his father in death, or to have attended his funeral, even had the telegram been delivered immediately upon the opening of the office at Johnston for business on Sunday morning—the morning train and the afternoon train reaching Richmond, through which point he had to go, at the same hour.

"(d) Because there was an entire absence of any testimony to show wilfulness on the part of the defendant company or such reckless disregard of the plaintiff's rights as would presume wilfulness, and this cause of action should not have been submitted to the jury."

(a) There was not an entire absence of evidence to show that the plaintiff was damaged through any fault of the defendant.    This division is overruled.

(b) We do not see that it would be profitable for this Court to consider the effect of testimony, that is work of the jury itself.    This sub-division is overruled.

(c) The testimony in regard to the hours at which the plaintiff could have left Johnston and could have reached Columbia were given to the jury.    They have been decided against the defendant.    We overrule this sub-division.

(d) The jury was charged as to the effect of wilfulness, or reckless disregard which would presume wilfulness, and there was some testimony on this point.    It is the jury's duty to weigh this testimony.    It has done so.    This sub-division is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES.  I concur in overruling all exceptions, but I think exception 8 and sub-division (d) of exception 9 should be overruled on other grounds than those stated by Chief Justice Pope.    Exception 8 complains of the charge as to wilfulness on the sole ground that there was no evidence of wilfulness.    While I may be prepared to agree with appellant's contention that there was no such evidence, it is clear that appellant can take no advantage thereof.    There was no motion for nonsuit on that ground and no request to charge to that effect; on the contrary, the appellant specially requested the Court to instruct the jury as to the law governing recovery for wilful tort.    As the complaint charged wilfulness, and appellant by its conduct apparently assumed that there was evidence on that subject, it would be highly unjust to the Circuit Court to impute to it reversible error under the circumstances.    Sub-division (d) of exception 9 complains of error in refusing the motion for a new trial on the

same ground, but as the record fails to disclose that the motion was made on such grounds, there is no basis for the exception.

Mr. Justice Woods *concurs in the result.*